IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DEREK B. KOLB, § § § | |
| Plaintiff, § | CIVIL ACTION NO. 4:13-cv-03635 |
| § | |
| vs. § | |
| § | DEMAND FOR JURY TRIAL |
| WILLSHOW INCORPORATED d/b/a § TEXAS REALTY AND MANAGEMENT, § § | |
| Defendant. § § | |

**ORIGINAL COMPLAINT**

Defendant Willshow Incorporated d/b/a Texas Realty and Management ("TRAMCO") refused to rent to Plaintiff Derek B. Kolb, a medically retired sergeant from the U.S. Army, because he requires a service animal due to his disabilities. TRAMCO thus discriminated against Sgt. Kolb on the basis of his disability in (1) refusing to make housing available to him, (2) applying the terms and privileges of their services to Sgt. Kolb in a discriminatory manner, and (3) failing to make reasonable accommodations in their rules, policies and procedures, in order to provide Sgt. Kolb an equal opportunity to use and enjoy his dwelling.  Sgt. Kolb brings this lawsuit to enforce his rights under the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 *et seq*.

Further, TRAMCO discriminated against Sgt. Kolb on the basis of his disability in the full and equal enjoyment of its leasing services and therefore violated Title III of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12181 *et seq*. Additionally, TRAMCO discriminated against Sgt. Kolb by denying him the full and

equal access to housing accommodation related to his service animal, thus violating Chapter 121 of the Texas Human Resources Code ("Chapter 121").

## PARTIES

1. Plaintiff Derek Kolb is an individual residing in Houston, Harris County, Texas. At all times relevant to this complaint, Sgt. Kolb was an individual with a "handicap" (hereafter referred to as a "disability") as defined by 42 U.S.C. § 3602(h).

2. Defendant Willshow Incorporated d/b/a Texas Realty and Management is a Texas Corporation, and it can be served through its president, Kitty L. Williams, 6608 FM 1960 W. Suite F, Houston, Texas 77069. Defendant Willshow Incorporated has filed an Assumed Name Certificate with the Clerk of Harris County, Texas, indicating that it does business in Harris County as Texas Realty and Management.

## JURISDICTION & VENUE

3. This case is brought under the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 *et seq.*, and under Title III of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12181 *et seq.* This Court therefore has federal-question jurisdiction under 28 U.S.C. § 1331.

4. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

5. Under 28 U.S.C. § 1391(b), venue is proper in this Court because a substantial part of the events giving rise to these claims occurred in this judicial district.

**STATEMENT OF RELEVANT FACTS**

<u>Derek Kolb's Disability & Its Impact on His Life</u>

6.      Sgt. Derek Kolb is a 29-year old medically retired Army Sergeant who served in Operation Iraqi Freedom from 2005–2006.

7.      Sgt. Kolb served in Diwaynia, Iraq and surrounding areas.  He served as an infantryman and conducted numerous convoys, traveling approximately 90,000 miles.  Additionally, Sgt. Kolb participated in raids and cleared Improvised Explosive Devices ("IED") from routes.  For his service, Sgt. Kolb received the following awards: Bronze Star, Army Commendation Medal, Army Good Conduct Medal, National Defense Service Medal, Army Service Ribbon, Overseas Service Ribbon, Armed Forces Reserve Medal, Combat Action Badge, Global War on Terrorism Service Medal, and Iraq Campaign Medal.

8.      During one convoy, Sgt. Kolb witnessed a group of fuel tankers explode due to an IED.  Sgt. Kolb rushed to assist in the treatment of those injured, including three who were horrifically burned.  Sgt. Kolb helped prep these men for evacuation, and stayed with these men until further medical services could arrive.  Two of the men passed away.  As a result of this incident, and others, Sgt. Kolb developed Post-Traumatic Stress Disorder ("PTSD").

9.      On September 25, 2005, Sgt. Kolb was gravely injured by an IED at Checkpoint 22 on a main supply route north of Diwaynia, on the way to Baghdad International Airport.

10.     As a result of the September 25, 2005 explosion and injury, Sgt. Kolb developed a traumatic brain injury.

11. Additionally, due to the IED explosion, Sgt. Kolb experienced significant leg injuries. Sgt. Kolb went through numerous surgeries for his legs and back injuries, as well as skin grafts.

12. Sgt. Kolb's PTSD and traumatic brain injury substantially limit him in the major life activities of socializing, interacting with others, and brain function compared to most people.

13. Sgt. Kolb has experienced isolation, hyper-vigilance, loss of pleasure, suicidal ideations, loss of interest, avoidance of crowds, loss of friends and family, and increased anxiety, all because of his PTSD.

14. Sgt. Kolb requires the use of an electrically powered mobility device due to his leg injuries for traveling more than short distances. He is unable to walk without pain, and cannot walk more than a few hundred yards without resting. Sgt. Kolb is also unable to run. Further, Sgt. Kolb has difficulty standing more than 45 minutes at a time, and his legs go numb easily.

15. Upon first leaving the Army, Sgt. Kolb wandered from place to place, and from job to job, due to his PTSD.

16. Sgt. Kolb also enrolled in college, but later withdrew.

17. Sgt. Kolb also withdrew from his family, and was no longer invited to family gatherings. Sgt. Kolb went two years without being in contact with his family.

18. Because of the impact his PTSD had on his life, by 2011 Sgt. Kolb was homeless.

### Sgt. Kolb Moved to a Transitional Residence called "Camp Hope" for His PTSD

19. In August 2012, Sgt. Kolb began living at Camp Hope in Harris County, Texas, in order to help with his PTSD.

20. Camp Hope is a transitional housing facility for homeless veterans with PTSD.

21. At Camp Hope, Sgt. Kolb lived in a residence with other veterans who experienced the same daily struggles living with PTSD as he did. As part of living at Camp Hope, Sgt. Kolb attended group meetings and saw a counselor for his PTSD.

22. While at Camp Hope, Sgt. Kolb began to turn his life around. As time went by, Sgt. Kolb volunteered to be the house "boss," which meant he was responsible for the other individuals living in the home.

23. Sgt. Kolb worked at an office run by Camp Hope.

24. During his time at Camp Hope, Sgt. Kolb began to reconnect with his family.

25. Sgt. Kolb tended a garden at the Camp Hope facility, which also helped with his PTSD.

### Sgt. Kolb Wants to Live Independently, and Is Prescribed a Service Animal

26. During his stay at Camp Hope, Sgt. Kolb saw a medical doctor for his PTSD.

27. Sgt. Kolb lived at Camp Hope from September 2012 until May 2013.

28. During his stay at Camp Hope, Sgt. Kolb decided he wanted to live independently.

5

29. In order to alleviate the effects of his PTSD, and to help Sgt. Kolb's transition to living on his own, Sgt. Kolb's doctor prescribed, and his counselor supported, the use of a service animal to live with him.

30. Sgt. Kolb applied for a service animal with the "Train A Dog - Save A Warrior" ("TADSAW") program, which is run by the TADSAW Foundation, Inc.

31. TADSAW's mission "is to unite wounded warriors, suffering with PTSD, with homeless, rescue shelter dogs, which are evaluated and deemed viable, to nurture a healing and rejuvenating bond between the two. The result is a positive, non judgmental, unconditional relationship desperately needed by both." TADSAW assists veterans with providing training for their service animals.

32. Sgt. Kolb was accepted into the program and was scheduled to receive his service animal in May 2013.

33. In May 2013, Sgt. Kolb also began looking for rental places in Harris County.

### Sgt. Kolb Attempts to Use TRAMCO to Find a Home of His Own

34. Sgt. Kolb sought the real estate services of TRAMCO to identify and acquire a rental home for him.

35. On information and belief, TRAMCO finds rental properties and acts as the leasing agent between the property owner and the tenant.

36. Sgt. Kolb dealt with TRAMCO's agent Sheena Ayers in trying to find a property.

37. Sgt. Kolb became interested in a rental home identified to him as "Stoneleigh," which is located in Houston, Texas.

38. The rent for the Stoneleigh property was $1,100.00 per month.

39. Sgt. Kolb wanted to move into a new property by the end of May 2013, or at the latest, early June 2013.

40. At this time, Sgt. Kolb became aware that he would receive his service animal by the time he moved into his new property.

41. Sgt. Kolb also learned of the identity of his service animal—a husky-mix dog named "Balto."

42. On or about May 14, 2013, Sgt. Kolb informed Ms. Ayers that he would be living with a service animal that he identified to her as his "service animal."

43. Ms. Ayers did not request any documentation regarding Sgt. Kolb's "service animal," or otherwise seek information regarding its breed or its use as a "service animal," except to ask for a picture of it.

44. On or about May 14, 2013, Sgt. Kolb emailed a picture of Balto to Ms. Ayers, in order to further his rental application.

45. Ms. Ayers emailed the picture of Balto to Cindy Garcia, the office manager for TRAMCO.

46. In an e-mail on May 14, 2013, Ms. Garcia indicated that Balto looked like a "German Shepherd so answer is no."

47. On the same day, Ms. Ayers forwarded Ms. Garcia's e-mail to Sgt. Kolb.

48. On or about May 14, 2013, Sgt. Kolb replied to Ms. Ayers by email, informing her that Balto was a service animal related to his disabilities.

49. In a May 14, 2013 e-mail to Sgt. Kolb, Ms. Ayers responded that the service animal was an "aggressive breed" and TRAMCO would not allow it at the Stoneleigh property.

### Sgt. Kolb Continues to Try to Work with TRAMCO by Acquiring Another Service Animal

50. Because TRAMCO refused to help him rent the Stoneleigh property because of Balto, Sgt. Kolb asked TADSAW for a different service dog. He was assigned a Greyhound/Black Mouth Cur mix named "Hank."

51. Even though he did not think it was right of TRAMCO to deny his rental application based on Balto, Sgt. Kolb nevertheless obtained Hank because he wanted to find a place as soon as possible that provided him privacy and independence.

52. On or around May 15, 2013, Sgt. Kolb sent a telephonic text message and photo of Hank to Ms. Ayers.

53. On May 17, 2013, Ms. Ayers told Sgt. Kolb that the Stoneleigh owner believed Hank also looked aggressive. Ms. Ayers advised Sgt. Kolb that he needed to forget the Stoneleigh property.

54. Due to his need to quickly find housing, Sgt. Kolb continued to try to work with TRAMCO, and he identified additional properties he would like to rent with Hank as his service animal. For example, even though he did not think it was right, Sgt. Kolb offered to pay a security deposit for his service animal and pay three months rent in advance in order for TRAMCO to find a property for him.

55. While continuing to work with TRAMCO, Sgt. Kolb grew increasingly frustrated and felt that Ms. Ayers did not want to further assist him.

56. On May 21, 2013, Sgt. Kolb and Ms. Ayers traded phone calls about certain additional properties Sgt. Kolb wanted to rent. In their last phone call together at approximately 12:07 p.m., Sgt. Kolb continued to see if he qualified for additional properties leased through TRAMCO. At the end of the conversation, Ms. Ayers attempted to brush Sgt. Kolb off the line and told him she would call him back in 30 minutes. Sgt. Kolb waited over two hours to hear from Ms. Ayers. At approximately 2:34 p.m., Sgt. Kolb called Ms. Ayers and left her a voicemail message. In that message, Sgt. Kolb pleaded for Ms. Ayers to return his call as he wanted to find a property soon. Sgt. Kolb never heard back from Ms. Ayers.

57. Frustrated and discouraged with the way he had been treated by TRAMCO over the past week, Sgt. Kolb no longer used TRAMCO as his leasing agency.

58. Sgt. Kolb used another leasing agency that promptly found him a property without any complications involving his service animal.

### The Impact of TRAMCO's Behavior on Sgt. Kolb's PTSD

59. TRAMCO's actions resulted in a great deal of renewed stress on Sgt. Kolb, exacerbating his PTSD, and he began to regress in his recovery, and experienced many personal difficulties, including:

   a. withdrawing to his bedroom at Camp Hope;

   b. obsessing about finding rental listings through TRAMCO that would accept him and his service animal;

   c. failing to fulfill his duties as house boss as he had before;

   d. failing to attend therapeutic group meetings;

   e. attending work less frequently;

9

      f.   withdrawing again from family members; and

      g.   neglecting the garden that he had carefully cultivated over several months.

60.    Sgt. Kolb's housemates at Camp Hope began noticing that he was decompensating.

61.    Eventually, Sgt. Kolb found a rental property, but only by using another realty management company.

62.    Sgt. Kolb's current rental property is $1,200.00 a month in rent, which is $100.00 more a month than the Stoneleigh property.

63.    Sgt. Kolb's current rental property is further away from family and his medical services than the Stoneleigh property.

<u>Hank's Impact on Alleviating Sgt. Kolb's PTSD</u>

64.    Sgt. Kolb now lives with Hank. Sgt. Kolb and a trainer from TADSAW perform ongoing training to Hank. In particular, they train Hank to assist with Sgt. Kolb's stability, to retrieve Sgt. Kolb's medical case, to alert Sgt. Kolb when someone enters the room, and to help Sgt. Kolb up from a chair or couch.

65.    Since living with Hank, Sgt. Kolb's PTSD has markedly improved. He has been able to reduce the number of PTSD medications taken by four.

66.    Hank calms Sgt. Kolb, alerts him to unseen or unexpected encounters, "watches his six," and generally acts as a "battle buddy" who he can "talk to" in confidence about his life.

67.    Hank wakes Sgt. Kolb from nightmares related to his PTSD.

68.    Hank also reminds Sgt. Kolb to take his medications.

69. Hank also helps with Sgt. Kolb's mobility and stability around the house and other places, providing a stable base to balance Sgt. Kolb.

70. Family and friends have noticed a marked improvement in Sgt. Kolb since he has finally been able to live with Hank.

### Sgt. Kolb's Desire to Use TRAMCO in the Future

71. Sgt. Kolb has a desire to use TRAMCO again in the future if they change their practices as it pertains to individuals who have disabilities and require service animals.

### FIRST CAUSE OF ACTION— FEDERAL FAIR HOUSING ACT

72. Plaintiff hereby incorporates by reference paragraphs 1 through 71 of this Complaint.

73. TRAMCO's conduct violates the Fair Housing Act, which prohibits discrimination in housing on the basis of disability.

74. TRAMCO discriminated against Sgt. Kolb in the rental of the Stoneleigh property, and other properties, making housing unavailable to him, because of his disability. This discrimination violated 42 U.S.C. § 3604(f)(1)(A) of the Fair Housing Act, and its enforcing regulations at 24 C.F.R. § 100.202(a).

75. TRAMCO discriminated against Sgt. Kolb in the terms, conditions, or privileges of the rental of a dwelling, because of his disability. This discrimination violated 42 U.S.C. § 3604(f)(2)(A) of the Fair Housing Act, and its enforcing regulation at 24 C.F.R. § 100.202(b).

76. TRAMCO discriminated against Sgt. Kolb by failing to make reasonable accommodations of their rules, procedures, and/or policies that were necessary for Sgt.

11

Kolb to use and enjoy TRAMCO's rental properties. This discrimination violated 42 U.S.C. § 3604(f)(3)(B), and its enforcing regulation at 24 C.F.R. § 100.204.

## SECOND CAUSE OF ACTION—
## TITLE III OF THE AMERICANS WITH DISABILITIES ACT

77. Plaintiff hereby incorporates by reference paragraphs 1 through 71 of this Complaint.

78. TRAMCO's conduct violates Title III of the Americans with Disabilities Act ("ADA"), which prohibits discrimination by places of public accommodations on the basis of disability.

79. TRAMCO discriminated against Sgt. Kolb in the rental of the Stoneleigh property, and other properties, when it failed to rent to him because of his service animal. This violated 42 U.S.C. § 12184(a) of the ADA, and its enforcing regulation at 28 C.F.R. § 36.302(c).

## THIRD CAUSE OF ACTION—
## CHAPTER 121 OF THE TEXAS HUMAN RESOURCE CODE

80. Plaintiff hereby incorporates by reference paragraphs 1 through 71 of this Complaint.

81. TRAMCO's conduct violates Chapter 121 of the Texas Human Resources Code, which prohibits discrimination in housing on the basis of disability.

82. TRAMCO discriminated against Sgt. Kolb by denying him full and equal access to housing accommodations offered for rent or lease by TRAMCO. This violated Tex. Hum. Res. Code § 121.003(g).

83. TRAMCO discriminated against Sgt. Kolb by denying him the full and equal access to housing accommodation related to his service animal. This violated Tex. Hum. Res. Code § 121.003(h).

## DAMAGES

84. TRAMCO's actions caused damages to Sgt. Kolb in the form of increased rent and mileage.

85. TRAMCO's actions also caused Sgt. Kolb mental anguish, emotional distress and harm.

86. As a result, TRAMCO is liable for compensatory damages under the Fair Housing Act.

87. In addition, TRAMCO—an experienced housing provider that should be aware of its obligations under the Fair Housing Act—intentionally or recklessly disregarded the Fair Housing Act, or acted with deliberate indifference to Sgt. Kolb's rights. TRAMCO is thus liable for punitive damages.

88. TRAMCO is liable for damages to Sgt. Kolb under Chapter 121 of the Texas Human Resource Code for violating his civil liberties.

## INJUNCTIVE RELIEF

89. Sgt. Kolb seeks a permanent injunction against Defendant, requiring the following:

   a. Defendant to adopt policies consistent with guidance from the U.S. Department of Justice (DOJ) and U.S. Department of Housing & Urban Development (HUD), as they relate to service animals in housing;

b. Defendant to adopt policies and procedures for handling requests for accommodations under the Fair Housing Act that are consistent with the guidelines of the DOJ and HUD; and

c. Defendant and its staff to undergo fair housing training, in particular with regard to handling accommodation requests related to service animals.

## RELIEF REQUESTED

90. The Plaintiff asks this court to enter a judgment:

A. Awarding Plaintiff a permanent injunction requiring the items listed in Paragraph 89.a. through 89.c. above;

B. Awarding Plaintiff actual and compensatory damages;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff his costs, expenses, fees, and reasonable attorneys' fees (under the Fair Housing Act and Title III of the Americans with Disabilities Act);

E. Awarding Plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

F. Awarding Plaintiff such other relief, legal or equitable, as may be warranted.

**JURY DEMAND**

91.     Plaintiff requests a jury trial for all issues so triable.

                                      Respectfully submitted,

                                      *s/Tyler T. VanHoutan*

CHRISTOPHER P. MCGREAL
Southern Dist. ID  1374440
State Bar No. 24051774
DISABILITY RIGHTS TEXAS
1420 W. Mockingbird Lane, Suite 450
Dallas, Texas 75247
(214) 845-4056 (Phone)
(214) 630-3472 (Fax)
cmcgreal@drtx.org

BRIAN EAST
Southern Dist. ID  453108
State Bar No.  06360800
DISABILITY RIGHTS TEXAS
2222 W. Braker Ln.
Austin, Texas  78758
(512) -407-2718 (Phone)
(512) -454-3999 (Fax)
beast@drtx.org

TYLER T. VANHOUTAN
Southern Dist. ID 30827
State Bar No. 24033290
tvanhoutan@winston.com
LUKE A. CULPEPPER
Southern Dist. ID 1062343
State Bar No. 24059632
lculpepper@winston.com
WINSTON & STRAWN, LLP
1111 Louisiana St., 25th Floor
Houston, Texas 77002
(713) 651-2600 (Phone)
(713) 651-2700 (Fax)


ATTORNEYS FOR PLAINTIFF